2012 WY 147

In the Matter of the WORKER'S COMPENSATION CLAIM OF: Tyler L. STALLMAN, Appellant (Petitioner),

v.

STATE Of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).

No. S–12–0087.

Supreme Court of Wyoming.

Nov. 20, 2012.

Representing Appellant: Brian J. Hunter of McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN *, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] Tyler L. Stallman was injured in a car accident that occurred in the course of her employment. After receiving a 22% permanent partial impairment award from the Wyoming Worker's Compensation Division (Division), she sought permanent partial disability (PPD) benefits. The Division denied her application stating that she had not complied with the statutory work search requirements. Ms. Stallman requested a contested case hearing. Both parties submitted motions for summary judgment. After a hearing, the Office of Administrative Hearings (OAH) concluded as a matter of law that Ms. Stallman had not timely submitted documentation showing she had sought work and granted summary judgment for the Division.

[¶ 2] Ms. Stallman sought review in the district court, which affirmed the OAH's ruling. She then appealed to this Court, claiming the OAH ruling granting the Division's summary judgment motion was arbitrary, capricious and contrary to the evidence. Specifically, she asserts the Division improperly denied her application for benefits when she did not submit her work search documentation on the date it arbitrarily imposed—a date weeks before the statutory deadline for submitting her application. She contends the OAH erred in upholding the denial based upon its incorrect finding that she had failed to provide her work search documentation as required by Wyo. Stat. Ann. § 27–14–405(h)(iii) (LexisNexis 2011).

[¶ 3] We hold that Ms. Stallman's work search submission was timely. We further hold that she is entitled to a hearing and the opportunity to present evidence showing that she actively sought work. We reverse the district court's order affirming the OAH's order granting the Division's motion for summary judgment and remand for proceedings consistent with this opinion.

## ISSUES

[¶ 4] Ms. Stallman states the issues for this Court's determination as follows:

I. Whether the decision by the Office of Administrative Hearings to grant the Wyoming Division of Workers' Compensation's Motion for Summary Judgment was arbitrary, capricious, not in accordance with the substantial evidence presented and contrary to Wyoming Statute.

II. Whether the decision by the Office of Administrative Hearings to deny Ms. Stallman's Motion for Summary Judgment was arbitrary, capricious and contrary to Wyoming Statute.

The Division asserts the OAH properly granted its motion for summary judgment, Ms. Stallman did not timely submit her application with the required documentation and it was not estopped from denying her claim.

## FACTS

[¶ 5] In November of 2006, Ms. Stallman was working as a corrections officer for the Women's Center in Lusk, Wyoming. She was driving to Sheridan to pick up an inmate in the course of her employment when her vehicle slid on the ice, spun off the road and rolled. She suffered a broken pelvis, bruised lungs and other injuries. She applied for and received temporary total disability benefits until she was assigned a 22% permanent impairment rating and began receiving permanent partial impairment benefits.

[¶ 6] In October of 2009, Ms. Stallman underwent a functional capacity evaluation. The evaluating physician concluded she could return to light duty work but was not capable of performing the work required of a corrections officer. Ms. Stallman filed her application for PPD benefits on October 27, 2009. On November 4, 2009, the Division notified Ms. Stallman that her application was incomplete and asked her to submit documentation showing her efforts to find work. The notice

*Justice Golden retired effective September 30, 2012.*

informed her the Division must receive the information by December 23, 2009. Ms. Stallman did not submit the documentation on the date requested and, that same day, the Division issued a final determination denying her application on the ground that she was not actively seeking work. More specifically, the final determination stated:

> Your work search does not contain a minimum of five (5) contacts per week over the course of [a] six (6) week period immediately preceding the date the application is filed or immediately following the date the application is filed with the Division. Wyoming Statute § 27–14–405(h)(iii).

[¶ 7] The Division advised Ms. Stallman that she had the right to object to the determination and request a contested case hearing. Ms. Stallman requested a hearing. Prior to the hearing date, the Division filed a motion for partial summary judgment in which it asserted Ms. Stallman had failed to submit proof of her work search as required, entitling it to judgment as a matter of law on her claim for PPD benefits.[1] Ms. Stallman filed a response to the Division's motion and moved for summary judgment in her favor on her claim for PPD benefits. In the meantime, she provided work search documentation to the Division.

[¶ 8] After a telephone hearing, the OAH entered an order finding that Ms. Stallman had failed to timely provide the required documentation and granting summary judgment for the Division. Ms. Stallman sought review in district court, which affirmed the denial of benefits. Ms. Stallman timely appealed the district court's order to this Court.

## STANDARD OF REVIEW

[¶ 9] When considering an appeal from a district court's review of an administrative agency's decision, we treat the case as if it had come directly from the administrative agency, without giving any deference to the district court's decision. *Davenport v.*

*State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 6, ¶ 10, 268 P.3d 1038, 1041 (Wyo.2012), citing *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 10, 247 P.3d 845, 848 (Wyo.2011) and *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;
>
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>
> (D) Without observance of procedure required by law; or
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 10] The facts in this case are not in dispute. We are presented solely with a question of statutory interpretation. When the issue is one of interpretation and application of law, we give no deference to an agency's decision:

---

1. The Division captioned its motion as one for "partial" summary judgment. However, in the final sentence of its motion, the Division asserted that it was entitled to judgment as a matter of law on Ms. Stallman's claim for PPD benefits, suggesting that it was seeking summary judgment on the claim in its entirety. The OAH ultimately granted summary judgment for the Division as to the entire claim.

The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which our review authority is plenary. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law.

*State ex rel. Wyo. Workers' Safety & Comp. Div. v. Singer*, 2011 WY 57, ¶ 5, 248 P.3d 1155, 1157 (Wyo.2011) (citations omitted). In other words, we review *de novo* an agency's conclusions of law. *Id.* (citations omitted).

## DISCUSSION

[¶ 11] Ms. Stallman asserts the OAH erred as a matter of law in granting the Division's summary judgment motion and denying hers. She asserts that under the applicable statute and rule, she had until January 15, 2010, to complete her PPD application; therefore, the Division's December 23, 2009, denial of her claim was premature and improper. She further contends that after the denial, she understood her only remedy was to request a contested case hearing. She did so and, prior to the hearing, provided her work search documentation to the Division. She maintains that at the time of the hearing she had met her burden of proving that she had actively looked for work as required by § 27–14–405(h)(iii), the Division failed to rebut her evidence and the OAH should have awarded her benefits.

[¶ 12] The Division argues Ms. Stallman failed to timely submit her completed application for PPD showing her work search; therefore, the OAH's order granting its summary judgment motion was in accordance with the law. The Division contends the undisputed evidence showed that Ms. Stallman submitted her work search documentation months after the statutory deadline. The Division further asserts it did not mislead Ms. Stallman or induce her failure to timely submit the information requested; therefore, it is not estopped from denying the PPD application.

[¶ 13] Section 27–14–405 provides in pertinent part as follows:

(h) *An injured employee* awarded permanent partial impairment benefits *may apply for a permanent disability award subject to the following terms and conditions:*

(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;

(ii) *An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date;* and

(iii) *The employee has actively sought suitable work,* considering the employee's health, education, training and experience.

(emphasis added.)

[¶ 14] To interpret this provision, we apply our usual rules of statutory interpretation:

[T]he paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

*Office of State Lands and Investments v. Mule Shoe Ranch, Inc.*, 2011 WY 68, ¶ 13, 252 P.3d 951, 954–955 (Wyo.2011), quoting *Dorr v. Smith, Keller & Assoc.*, 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo.2010) (citation omitted). Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Office of State Lands, id.*, citing *Wyo. Med. Center, Inc. v. Wyo.*

*Ins. Guar. Ass'n,* 2010 WY 21, ¶ 19, 225 P.3d 1061, 1066 (Wyo.2010).

[¶ 15] Section 27–14–405 clearly sets out the terms and conditions that an injured employee must satisfy in applying for PPD benefits. Pursuant to subsection (h)(ii), one of the conditions is that a claimant has filed an application not before three months of the date of ascertainable loss or three months before the last impairment payment, whichever is later but, in any event, within one year after the later date. The date of ascertainable loss in Ms. Stallman's case was either June 24, 2008, the effective date of termination of her temporary total disability benefits, or October 22, 2008, the date of the final determination of permanent partial impairment benefits.[2] Both of those dates were before April 15, 2009, the date Ms. Stallman received her last permanent partial impairment payment. Thus, the date for determining when Ms. Stallman was required to file her application was three months before April 15, 2009, or January 15, 2009. Giving effect to the last clause of subsection (h)(ii), "but in no event later than one (1) year following the later date," she was required to file her application for PPD benefits by January 15, 2010. She clearly satisfied this condition when she filed her application on October 27, 2009.

[¶ 16] Pursuant to subsection (h)(iii), another condition that an injured employee must satisfy to be eligible for a PPD award is that he or she has actively sought suitable work. The statute is silent as to how or when, or for that matter whether, an employee must present evidence that he or she has actively looked for work. However, the Division's rules contain the following provision:

(c) *Actively Seeking Work.* For purposes of benefit eligibility, a claimant is actively seeking work if *the claimant provides tangible evidence of the work search to the Division. Completion of the work search form will be considered tangible evidence. The work search must contain a minimum of five contacts per week over the course of a six week period. The six week period must be immediately preceding the date the application is filed with the Division or immediately following the date the application is filed with the Division.* The contacts listed on the work search must be made for work the claimant is reasonably qualified to perform and is willing to accept. Actions that would be considered an active search for employment include completing job applications, faxing or mailing resumes (include proof), or visiting the employers in person. Claimant must contact the employer he was working for at the time of injury to inquire if the employer has work available within their medically documented restrictions.

Ch. 1 § 4(c), Wyoming Workers' Compensation Rules, Regulations and Fee Schedules (emphasis added). We interpret agency rules utilizing the same standards we use when interpreting statutes. *Bailey v. State ex rel. Wyo. Workers' Comp. Div.,* 2010 WY 152, ¶ 10, 243 P.3d 953, 956 (Wyo.2010).

[¶ 17] Pursuant to the rule, a claimant is required to provide to the Division tangible evidence of the work search, and one way of providing that evidence is by filling out and submitting the Division's work search form. The rule also requires the work search to include a minimum of five contacts over a six week period, which period must be immediately before or immediately after the date the application is filed with the Division. Although the rule clearly states that tangible evidence of the work search must be provided to the Division and that the six week job search period must be immediately before or immediately after the date the application is filed, it does not state when the evidence must be provided to the Division. The rule

**2.** The date of ascertainable loss is the point in time when it is apparent that permanent physical impairment has resulted from a compensable injury, the extent of the physical impairment due to the injury can be determined and the physical impairment will not substantially improve or deteriorate because of the injury. *Phillips v. TIC–The Indus. Co. of Wyoming, Inc.,* 2005 WY 40, ¶ 32, 109 P.3d 520, 534 (Wyo.2005). Ascertainable loss is commonly measured at the point of maximum medical improvement. *Id.* The point of ascertainable loss is also the point at which temporary total disability payments end and an employee may apply for a permanent partial impairment award. § 27–14–404(c)(ii); § 27–14–405(f).

does not, for example, state that the evidence must be provided to the Division at the time the application is filed, or that it must be provided to the Division within so many days or weeks after the application is filed. The rule, like the statute, is silent as to when the work search evidence must be submitted.

[¶ 18]   Given that silence, we cannot interpret the statute or the rule as requiring Ms. Stallman to provide proof of her work search on the date she filed her application. Nor can we conclude that she was required to provide it by December 23, 2009, the date the Division asked her to submit it. Pursuant to the clear language of § 27–14–405(h)(ii), Ms. Stallman had until January 15, 2010, to file her application. Neither the statute nor the rule imposes a different deadline for submitting proof of her work search. The rule does require the work search itself *to be conducted* in the six weeks immediately before or after the application is filed, but it plainly does not require work search evidence *to be filed* on any particular date. Because the only filing deadline appearing in the statute gave Ms. Stallman until January 15, 2010, to submit her application, we conclude she also had until that date to submit her work search evidence. The fact that she submitted her application sooner than the statute required did not change the statutory filing requirements. Pursuant to the rule, the work search had to be *conducted* in the six weeks immediately before or after October 27, 2009; it did not, however, have to be *filed* prior to January 15, 2010.[3]

[¶ 19]   The question then becomes whether, under the circumstances presented here, the evidence was untimely because Ms. Stallman did not submit it by the January 15, 2010, deadline for filing her application. The OAH concluded she was required under § 27–14–405(h)(ii) to submit a complete application including proof of her job search by that date; her failure to do so was not excusable; therefore, as a matter of law, she was not entitled to PPD benefits. We disagree.

[¶ 20]   The problem in this case arose when the Division arbitrarily imposed a deadline by which Ms. Stallman was to submit documentation of her job search. The problem escalated when, upon not receiving the documentation on the date imposed, the Division issued a final determination denying her benefits and notifying her of her right to object and request a hearing. The Division further notified Ms. Stallman that it must receive her written request for a hearing by January 7, 2010.[4] It is easy to see why at that point Ms. Stallman would have believed there was no point in submitting work search documentation to the Division—it had, after all, denied her application—and that her only recourse—as the Division had advised—was to request a hearing. Under these circumstances, we cannot agree with the OAH that upon receiving the Division's final determination denying her application for benefits and notifying her of her right to request a hearing, Ms. Stallman was still obligated to pursue her claim further with the Division by submitting to it by the January 15, 2010 deadline proof of her work search. Rather, upon the denial of her application, January 15, 2010 was no longer the operative date and Ms. Stallman properly and timely requested a hearing. The OAH erred as a matter of law in granting summary judgment for the Division on the ground that Ms. Stallman failed to timely provide evidence of her work search.

[¶ 21]   In her second issue, Ms. Stallman asserts the OAH erred in denying her motion for summary judgment because she met her burden of showing that she had complied with § 27–14–405(h)(iii) by actively seeking suitable work and the Division failed to rebut that evidence with evidence showing that suitable employment existed. On this basis, in addition to reversal of the OAH order granting summary judgment for the Division, Ms. Stallman seeks an order granting her motion for summary judgment.

---

3.   Interestingly, if Ms. Stallman had waited until the January 15, 2010 deadline to file her application and began looking for work immediately thereafter, she would have had another six weeks under the rule to conduct her job search.

4.   The Division's final determination actually advised Ms. Stallman that her written request for a hearing must be received on or before January 9, 2009—obviously, a typographical error.

[¶ 22] The OAH did not reach the question of whether Ms. Stallman met her burden of proving compliance with § 27–14–405(h)(iii) and the Division's rule. Because it concluded as a matter of law that Ms. Stallman failed to timely present evidence of her work search, the OAH did not consider the tangible evidence presented, hear testimony concerning her work search, weigh the evidence or make credibility determinations. These are functions for the fact finder, not for this Court. *Olivas v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 29, ¶ 17, 130 P.3d 476, 485 (Wyo.2006). We, therefore, remand the case to the OAH for a hearing at which time the parties may present evidence on the issue of whether Ms. Stallman actively sought work in accordance with the statute and the rule.

[¶ 23] Ordinarily, a finding that a remand is necessary would end our inquiry. However, one additional issue requires consideration because it seems likely to arise on remand. *Belden v. Thorkildsen*, 2007 WY 68, ¶ 18, 156 P.3d 320, 325 (Wyo.2007). In the course of reviewing the OAH's ruling, the district court concluded not only that Ms. Stallman's work search submission was untimely but also that the submission did not comply with the rule's requirement that work searches be done six weeks before or six weeks after an application is filed. Because Ms. Stallman's documentation showed she began looking for work on October 19, eight days before she filed her application, the district court concluded her work search did not fall into either six-week period and did not, therefore, comply with the rule.

[¶ 24] Although we do not ordinarily consider a district court's ruling on review from an administrative agency, we do so here because the issue may arise again on remand. The question of whether the district court's interpretation of the rule is correct is one of law which we review *de novo*. As with the issue of timeliness under the provisions of the statute and rule, our paramount consideration in interpreting the six-week requirement is to determine the rule's intent. *Office of State Lands*, ¶ 13, 252 P.3d at 954–955; *Bailey*, ¶ 10, 243 P.3d at 956. We ascertain that intent initially and primarily from the words used in the rule, looking first to the plain and ordinary meaning of the words to determine if it is ambiguous. The rule states:

> The work search must contain a minimum of five contacts per week over the course of *a six week period. The six week period must be immediately preceding the date the application is filed with the Division or immediately following the date the application is filed with the Division.*

(emphasis added).

[¶ 25] The plain language of the rule requires evidence of a work search covering a six week period immediately before or immediately after the date the application is filed. The district court read the language as requiring a work search conducted either exclusively in the six weeks before the application is filed or exclusively in the six weeks after the application is filed. We do not read the language so narrowly. Rather, we conclude the rule contemplates a six week period that may overlap the application date. To adopt the district court's interpretation would be contrary to our rule that we do not interpret statutes or rules in a manner that produces absurd results. *Chevron U.S.A., Inc. v. Dept. of Revenue*, 2007 WY 43, ¶ 18, 154 P.3d 331, 337 (Wyo.2007). A work search covering six weeks, three falling before and three falling after the application date, is a work search covering a six week period immediately before or after the application date. Likewise, a search covering one or two weeks before and, respectively, four or five weeks after, covers a six week period before or after the application date. In attempting to prove her entitlement to benefits, Ms. Stallman is not required on remand to present evidence showing her work search covered exclusively the six week period before or after she filed her application.

[¶ 26] As we have noted previously, the legislature expressly directed in § 27–14–101 (LexisNexis 2011) that the Wyoming Worker's Compensation Act be construed to assure "the quick and efficient" delivery of benefits to injured and disabled workers and that "claims be decided on their merits." *State ex rel. Wyo. Workers' Comp. Div. v.*

*Gerdes*, 951 P.2d 1170, 1174 (Wyo.1997). The manner in which Ms. Stallman's claim has been treated satisfies neither of these objectives. She is entitled to a hearing and the opportunity to prove that she actively sought work within the meaning of § 27–14–405(h)(iii).[5]

[¶ 27] Reversed and remanded for proceedings in accordance with this decision.

---

5. The documentation Ms. Stallman submitted shows that she contacted five potential employers each week for the first four weeks, seven during the fifth week and three during the sixth week. At the hearing, the OAH will need to determine whether this satisfies the spirit of the rule requiring five contacts per week. The OAH will also need to determine whether Ms. Stallman's work search satisfied the other requirements of the rule, including whether she contacted the Women's Center about whether work was available there within her restrictions. In making all of these determinations, the OAH should keep in mind that completion of the work search form is not the only means by which an employee can prove that he or she actively sought suitable work. As the rule expressly states, other means of proving an active search include job applications, faxes, resumes and proof of in person contacts. Ch. 1 § 4(c), Rules.